UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN R. MALONE, JR., AS TRUSTEE OF THE GORDON L. BEELER IRREVOCABLE TRUST DATED MAY 26, 1999, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 3:05-CV-660 WCL |
| RELIASTAR LIFE INSURANCE COMPANY and AXA EQUITABLE LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the "Motion for Reconsideration or Certification" (Doc. No. 147) filed by Plaintiff John R. Malone, Jr., as Trustee of the Gordon L. Beeler Irrevocable Trust Dated May 26, 1999 ("plaintiff" or "Beeler Trust") on March 7, 2008.  Therein, plaintiff requests the court's reconsideration of its February 26, 2008 order (Doc. No. 146) denying the Beeler Trust's "Renewed Motion for Judgment as a Matter of Law, or in the Alternative, For New Trial" (Doc. No. 102).  In the alternative, the plaintiff requests that the court certify to the Supreme Court of Indiana the question of whether the court's final jury instruction number 22 correctly stated Indiana law.  Defendants AXA Equitable Life Insurance Company and Reliastar Life Insurance Company filed no responses.

The extensive procedural history and underlying facts of this case, including a six day jury trial, were previously set forth in this court's February 26, 2008 order, incorporated herein.  No additional facts are considered in ruling on the instant motion.  For the reasons that follow, the

Beeler Trust's motion will be DENIED.

## DISCUSSION

I.      **Reconsideration of the Court's February 26, 2008 Order**

Reconsideration is appropriate when the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id*. Reconsideration is discretionary and such motions should not be used to reargue previously presented points, *see Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003), but serve only a limited function. *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985).

The Beeler Trust's motion is not supported by any such circumstance making reconsideration appropriate. The instant case does not involve new factual issues or a change in the law, nor was the Beeler Trust a misunderstood litigant; it merely was an unsatisfied litigant who received an unfavorable, yet reasonable, jury verdict. The Beeler Trust has failed to identify any proper basis for altering or amending the court's ruling denying judgment as a matter of law or a new trial, rearguing instead the merits of its case.[1] Specifically, the Beeler Trust alleges that the court's final

---

[1] The Beeler Trust admits repeating arguments previously raised and considered: "As the Beeler Trust discussed at length in its Motion [Doc. No. 102] and associated reply [Doc. No. 112], there is no support in the common law, . . .for the language added to Jury Instruction No. 22 . . . ." *See* Beeler Trust Memo. at Doc. No. 147, p. 2.

2

jury instruction number 22 misstated Indiana's presumption of death standard,[2] and thus, improperly raised the plaintiff's burden and resulted in an erroneous verdict form.[3] These arguments were rejected in the court's February 26, 2008 order,[4] and the court will not expend its limited judicial resources reiterating the extensive factual findings and reasoning in its previous order to again reject the same. *See Heltzel v. Dutchmen Mfg., Inc.*, 2008 WL 623192, *2 (N.D.Ind. March 4, 2008) ("this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure") (citing *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988)).

The only new issue raised by the Beeler Trust's present motion, not previously addressed by the court, is the effect, if any, of *Green v. Shalala*, 51 F.3d 96 (7th Cir. 1995) and its application of 20 C.F.R. § 404.721, on the present case. The Beeler Trust believes the court should reconsider its February 26, 2008 order in light of *Shalala,* a decision published over a decade ago. Yet, an analysis of 20 C.F.R. § 404.721 and its legislative history reveals the fundamental flaw in the Beeler Trust's position.

---

[2]The Beeler Trust argued then, as it does now, that jury instruction number 22 erroneously raised the standard for invoking the presumption of death by requiring that Mr. Beeler be "inexplicably absent," or by requiring that his absence be "unexplained by circumstances other than those suggesting death."

[3]As before, the Beeler Trust argues that it was error to instruct the jury that if the Beeler Trust failed to prove that the presumption of death arose (question 1 of the verdict form), then there was no need to consider whether the Beeler Trust was able to prove the ultimate fact of Mr. Beeler's death (question 3 of the verdict form).

[4]In relevant part, the court's order dated February 26, 2008 (Doc. No. 146), thoroughly discussed that (1) the court's instructing the jury that Mr. Beeler's absence must, by a preponderance of the evidence, be unexplained by circumstances other than those suggesting death, did not raise the Beeler Trust's burden of proof, but properly required the Beeler Trust to show that it was more likely than not that Mr. Beeler's absence was not explained by something other than death; and (2) the court's special verdict form was properly formulated in a manner that allowed the jury to consider the only issue tried, whether the presumption of death applied.

**A.    20 C.F.R. § 404.721**

The Social Security Act provides for payment of insurance benefits to the child of an individual who dies insured, and if the individual's death cannot be established, then the individual will be presumed dead upon the submission of proper evidence by the claimant. *See* 42 U.S.C. § 402 and 20 C.F.R. § 404.721. The evidence necessary to raise the presumption of death under 20 C.F.R. § 404.721[5] has changed over time.

Title II of the Social Security Act once provided that a presumption of death arose with the submission of:

> (a) A certified copy or, or extract from, an official report or finding by an agency or department of the United States that a missing person is "presumed to be" dead as set out in Federal law (5 U.S.C. § 5565).
> . . .
> (b) Signed statements by those in a position to know and other records which show that the person has been absent from his or her residence **for no apparent reason**, and has not been heard from, for at least 7 years . . . .

*See* Social Security Administration, HEW, 43 Fed. Reg. 24,795 (June 7, 1978) (to be codified at 20 C.F.R. pt. 404).

In 1984, the Social Security Administration proposed a change to the regulation to clarify that a missing insured person is not presumed to be dead "if there are known circumstances that could reasonably explain the absence, even without direct evidence that such circumstances actually were the reasons for absence." Federal Old-Age, Survivors, and Disability Insurance; Evidence Provision for Inferring a Person is Dead, 49 Fed. Reg. 7,405-7,406 (February 29, 1984). The change was

---

[5] Until 1979, the provision was codified as 20 C.F.R. § 404.705 and contained slightly different wording, requiring an "unexplained absence" rather than an absence "for no apparent reason"; the amendment did not effect any change in the law.

4

needed because requiring the insured to be absent "for no apparent reason" yielded two very different interpretations: (1) the Secretary's position that the presumption only applied if all conditions described in the regulations were proven to exist by the claimant, i.e. an "insured person's disappearance [could not be] attributed to known domestic or financial difficulties or to some other rational reason for leaving home" and (2) several federal courts of appeals' decisions presuming that an insured person died solely due to being absent from home for seven years, thus shifting the burden to the Secretary to prove that the insured person was alive or had disappeared for a reason other than death. *Id*. Under the proposed amendment, death would be presumed if signed statements (by those in a position to know) and other records showed that all three of the following requirements were met:

> (1) The insured person has not had contact of any kind with any relatives, dependents, employers, or friends for at least 7 years.
> (2) A diligent search was conducted with the air of the appropriate authorities reasonably soon after the insured person's disappearance, but the search failed to locate or explain the absence of the insured person.
> (3) Circumstances surrounding the insured person's disappearance allow no reasonable explanation of that person's absence other than death.

*See* Federal Old-Age, Survivors, and Disability Insurance; Evidence Provision for Inferring a Person is Dead, 49 Fed. Reg. at 7,406. Facts existing around the time of the disappearance that may prevent the inference from being applied were to be considered, including but not limited to, legal action against the insured, domestic or marital discord, a pattern of disregard of family ties, substantial financial burdens, the disappearance of personal funds or assets, a past history of desertion, and factors such as age and health. *Id*. After much deliberation, the Social Security Administration chose not to adopt the proposed changes.

Instead, many years later, the agency proposed changes that would assist in establishing a national policy based on the interpretation set forth by the federal courts of appeals in finding that a presumption of death arises when a claimant for social security benefits for children proves that the insured has been absent for seven years.[6]  *See* Federal Old-Age, Survivors and Disability Insurance; Changes in Evidence Required to Presume a Person is Dead, 59 Fed. Reg. 37,002 (July 20, 1994) (to be codified at 20 C.F.R. pt. 404).

Effective April 17, 1995, the amendments were made to 20 C.F.R. § 404.721(b).  These amendments removed the language "for no apparent reason."  *See* Federal Old-Age, Survivors and Disability Insurance; Changes in Evidence Required to Presume a Person is Dead, 60 Fed. Reg. 19164 (April 17, 1995) (to be codified at 20 C.F.R. pt. 404); *Green v. Shalala*, 51 F.3d 96, 99, n. 4 (7th Cir. 1995) (noting that the agency's proposed amendment was pending at the time the decision was rendered).  The amended provision states in pertinent part that the presumption of death is established with:  "[s]igned statements by those in a position to know and other records which show that the person has been absent from his or her residence and has not been heard from for at least 7 years."  Federal Old-Age, Survivors and Disability Insurance; Changes in Evidence Required to Presume a Person is Dead, 60 Fed. Reg. at 19164 (codified at 20 C.F.R. pt. 404).  Therefore, a presumption of death arises when the claimant establishes that an individual has been absent and not

---

[6]*Shelnutt v. Heckler,* 723 F.2d 1131 (3rd Cir. 1983); *Aubrey v. Richardson,* 462 F.2d 782 (3rd Cir. 1972); *Autrey v. Harris,* 639 F.2d 1233 (5th Cir. 1981) (per curiam); *Johnson v. Califano,* 607 F.2d 1178 (6th Cir. 1979); *Brewster v. Sullivan,* 972 F.2d 898 (8th Cir. 1992); *Secretary of Health, Educ. & Welfare v. Meza,* 368 F.2d 389 (9th Cir. 1966); *Edwards v. Califano,* 619 F.2d 865 (10th Cir. 1980). The *Autrey* decision was binding as precedent in the Eleventh Circuit as well because it was issued before October 1, 1981, the date on which the former Fifth Circuit split into the Fifth and Eleventh Circuits. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc)*; see also, Shalala*, 51 F.3d at 99, n. 2.

heard from for seven years.  *Id*.  Once the presumption is made, the burden shifts to the Secretary to rebut the presumption either by presenting evidence that the missing individual is still alive or by providing an explanation to account for the individual's absence in a manner consistent with continued life rather than death.  *Id*.  The current version of 20 C.F.R. § 404.721(b) contains the same language, as it remains unchanged.  *See* 20 C.F.R. § 404.721.  The Beeler Trust contends that the Seventh Circuit's interpretation and application of 20 C.F.R. § 404.721 in *Green v. Shalala*, 51 F.3d 96 (7th Cir. 1995), essentially rejecting the "no apparent reason" requirement, is controlling upon the instant case.

        **B.**     *Green v. Shalala*, **51 F.3d 96 (7th Cir. 1995)**

In *Shalala*, the plaintiff's husband, John Charles Green, left to attend to his store on January 4, 1984, and never returned.  *Shalala*, 51 F.3d at 97.  Mr. Green left a letter for his wife apologizing for all the problems and sent his parents an envelope with letters for his family and keys to his truck.  *Id*. at 97-98.  The letters indicated that he would always miss the family and he would not return, as "it would be best if [he] left."  *Id*.  It was later discovered that Mr. Green was in legal trouble and that his business was in serious financial trouble.  *Id*. at 98.  Mr. Green did not attend significant family functions after his disappearance, and in July 1991, the county court issued Mr. Green's death certificate.  *Shalala*, 51 F.3d at 98, 101.  After the plaintiff filed for child survivor benefits on behalf of her son in 1991, the ALJ denied the claim on the ground that Mr. Green's disappearance was not unexplained, as required by 20 C.F.R. § 404.721.  *Id*. at 98.  The Appeals Council denied the plaintiff's request for review, and after suit was filed, the district court granted summary judgment in favor of the Secretary, rejecting the plaintiff's arguments that Mr. Green's absence need not be unexplained for the presumption to arise and that the decision was not supported by substantial

7

evidence. *Id*. at 98-99.

Upon review, the Seventh Circuit reversed the district court's ruling, finding instead that the ALJ's denial of child survivor benefits was not supported by substantial evidence where the ALJ failed to consider the purpose and adversarial nature of the state court's determination of death, as well as the quantum of evidence needed to obtain a presumptive certificate of death, and failed to discuss the payment of proceeds from Mr. Green's life insurance policy. *Shalala*, 51 F.3d at 101-02. The court, recognizing the fact that 20 C.F.R. § 404.721 had proposed revisions that were pending in order to remove the language "for no apparent reason," held that under 20 C.F.R. § 404.721 a rebuttable presumption of death is raised once the claimant establishes a seven-year absence, and if the Secretary comes forward with evidence to explain the missing person's absence the burden of production has been satisfied and the presumption is rebutted. *Id*. at 99-101. Explicitly refusing to render an opinion with respect to the outcome, the court remanded the case to permit the ALJ to reconsider the evidence of record. *Id*. at 102.

*Shalala* is clearly distinguishable from this case. *Shalala* involved the interpretation of a federal regulation in the social security setting; it did not entail Indiana's common law presumption of death as dictated by state law. Although 20 C.F.R. § 404.721 is admittedly intended to be based on general common law principles, the agency explicitly rejected its proposed 1984 amendments, which would have allowed the presumption of death to apply when the insured has not communicated with those closest to him in at least seven years, the disappearance allowed no reasonable explanation of the absence other than death, and a diligent search failed to locate or

8

explain the absence[7]—the very same evidence required by Indiana for the claimant to raise the presumption of death under the common law for life insurance proceeds. *See Roberts v. Wabash Life Ins. Co.*, 410 N.E.2d 1377 (Ind.Ct.App. 1980) ("[w]hen a person is inexplicably absent from home for a continuous period of seven years, fails to communicate with those persons who would be most likely to hear from him, and cannot be found despite diligent inquiry and search, that person is presumed to be dead."). Thus, it cannot be said that the evidentiary requirements needed to raise the presumption of death under 20 C.F.R. § 404.721 are consistent with Indiana's common law requirements, because the Social Security Administration rejected those common law principles.

Moreover, 20 C.F.R. § 404.721 was later amended to negate the requirement that the absence needed to be unexplained. This was done in order to establish "a national policy based on the interpretation set forth by [federal circuit] courts,"[8] <u>not</u> to coincide with Indiana's common law elements required to raise the presumption of death. In *Shalala*, the Seventh Circuit agreed with the approach "chosen by the circuits," and interpreted 20 C.F.R. § 404.721's presumption of death to apply once the claimant established a seven-year absence. *Shalala*, 51 F.3d at 100. The approach chosen by the circuits is not the approach chosen by Indiana. *Shalala*'s holding, consistent with the regulation as amended, does not establish any change to Indiana's common law presumption of death.

Indiana's common law presumption of death was clearly and explicitly set forth by the Court

---

[7]*See* Federal Old-Age, Survivors, and Disability Insurance; Evidence Provision for Inferring a Person is Dead, 49 Fed. Reg. 7,405-7,406 (February 29, 1984), as withdrawn in Federal Old-Age, Survivors and Disability Insurance; Changes in Evidence Required to Presume a Person is Dead, 59 Fed. Reg. 37,002 (July 20, 1994).

[8]*See* Federal Old-Age, Survivors and Disability Insurance; Changes in Evidence Required to Presume a Person is Dead, 59 Fed. Reg. at 37,002.

9

of Appeals of Indiana: "[w]hen a person is inexplicably absent from home for a continuous period of seven years, fails to communicate with those persons who would be most likely to hear from him, and cannot be found despite diligent inquiry and search, that person is presumed to be dead." *Roberts v. Wabash Life Ins. Co.*, 410 N.E.2d 1377 (Ind.Ct.App. 1980) (*citing Equitable Life Assurance Society v. James*, 127 N.E. 11 (Ind.Ct.App. 1920); *Metropolitan Life Insurance Co. v. Lyons*, 98 N.E. 824 (Ind.Ct.App. 1912)).  Unlike 20 C.F.R. § 404.721, no change to Indiana's common law presumption of death has occurred.  As such, this court was required to apply Indiana's presumption of death as Indiana's intermediate court applied it, and as the Supreme Court of Indiana would likely hold.  *See State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 669 (7th Cir. 2001) (in fulfilling the mandate of *Erie*,[9] a district court sitting in diversity must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal, but in the absence of guiding authority from the state's highest court, great weight must be accorded to the holdings of the state's intermediate appellate courts, unless there are persuasive indications that the state's highest court would reject the decision of the intermediate court).

In following Indiana's case precedent, this court properly determined that Mr. Beeler needed to be inexplicably absent in order for the Beeler Trust to raise the presumption of death.  Further, instructing the jury that Mr. Beeler's absence must, by a preponderance of the evidence, be unexplained by circumstances other than those suggesting death, did not raise the Beeler Trust's burden of proof.  The circumstances existing around the time of Mr. Beeler's disappearance were to be considered, and in the end, those circumstances prevented the inference of death from being applied since Mr. Beeler's absence was clearly not the result of death, but of intentional desertion.

---

[9]*Erie Railroad v. Tompkins*, 304 U.S. 64 (1938).

10

In addition, the Beeler Trust was not required to negate every possible explanation for Mr. Beeler's absence, but it was required to show that it was more likely than not that Mr. Beeler's absence was not explained by something other than death. *See also Davie v. Briggs*, 97 U.S. 628, 633-34 (1878) ("A person shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard from him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death."). As thoroughly discussed in the court's February 26, 2008 order (Doc. No. 146), the Beeler Trust failed to meet its burden.

The Beeler Trust also fails to recognize that not only did *Shalala* involve the interpretation of a federal social security administration regulation (with an outcome determinative proposed revision pending), *Shalala*, 51 F.3d at 99, n. 4, but in reaching its decision in *Shalala*, the Seventh Circuit referenced *Blew v. Richardson*, 484 F.2d 889, 892 (7th Cir. 1973) for the proposition that pre-departure evidence may support a finding that the individual's absence is not unexplained. *Shalala*, 51 F.3d at 100. The Seventh Circuit's discussion in *Blew*, addressing the presumption of death under the former version of 20 C.F.R. § 404.721 (requiring an absence for "no apparent reason"), recognized the importance that an individual's absence be unexplained, in accordance with the common law authorities:

> One may easily posit cases in which a fugitive's pre-departure statements so plainly describe an intent to disappear completely from former associates-such as an estranged spouse, muscular creditors, or a strict commanding officer-that a continued life under a new identity is at least as probable as death even though seven years have elapsed. Pushed to its logical conclusion the rule which the district court has followed would mean that after an absence of seven years death must be presumed no matter how strong the evidence of intent to disappear and to effect a complete change of identity, provided there were no

11

> post-departure explanation of his whereabouts. There are four reasons why we believe the Secretary's regulation did not promulgate such a rule.
>
> First, history teaches us that deliberate desertions do in fact take place frequently. Whatever our personal predilections might be, the statute does not authorize the payment of benefits to deserted victims. A wage earner's prolonged absence, which is more probably the consequence of deliberate desertion by a living spouse or parent than of death, should not, therefore, create a right to statutory benefits.
>
> Second, the Secretary's regulation is quite obviously based on the common law presumption. As we read the common law authorities, the presumption of death resting on evidence of an absence for seven years, could be rebutted either by (a) evidence of continued life during that period, or (b) evidence of motivation that created a probability of continued life notwithstanding the lack of any communication from the absentee for a prolonged period. In short, pre-departure evidence was admissible to rebut the presumption.
>
> Third, the text of the regulation itself quite plainly authorizes alternative means of rebutting the presumption. The regulation requires that the individual be "unexplainedly absent" and also "unheard of" for a seven year period. The presumption then applies "in the absence of any evidence to the contrary." A fair reading of this language indicates that the Secretary may adduce evidence to contradict either the unexplained character of the absence or the fact that the individual has not been heard of for seven years. If only the latter evidence were admissible, the requirement that the absence be unexplained would be meaningless. For by hypothesis every absence that meets the second requirement will be unexplained during the entire period subsequent to the last time anyone had heard of the absentee.
>
> Finally, we are told that the Secretary's interpretation has been consistently followed in thousands of cases since the regulation was first promulgated in 1951. There is no suggestion that this interpretation is not completely consistent with the governing statute. The Secretary's interpretation of his own regulation is therefore entitled to great respect.

*Blew v. Richardson*, 484 F.2d 889, 892-93 (7th Cir. 1973) (citations and footnotes omitted).

As addressed in *Blew*, and as revealed in this case, it is necessary that the insured's absence be unexplained by circumstances other than those suggesting death in order for the presumption of death to arise. Deliberate desertions do in fact take place frequently, as one did here, and Indiana's common law presumption of death does not authorize the payment of benefits to deserted victims. *See Metro. Life Ins. Co. v. Lyons*, 98 N.E. 824, 825-26 (Ind.Ct.App. 1912) (recognizing that proof of absence alone will not give rise to the presumption). Unlike the current version of 20 C.F.R. § 404.721, and the position adopted in *Shalala* and other courts of appeals in applying the federal regulation, Indiana's common law requires that the individual be inexplicably absent from home for a continuous period of seven years for the presumption to apply. Here, the presumption never applied because evidence contradicted the notion that Mr. Beeler's absence was inexplicable.[10] Mr. Beeler's pre-departure statements and actions so plainly describe his intent to disappear completely from his family, that it is at least equally probable that Mr. Beeler is still among the living with a new identity. Thus, Mr. Beeler's prolonged absence, which is more probably the consequence of deliberate desertion than of death, should not, and does not, create a right to benefits.

For the reasons stated above, *Green v. Shalala*, 51 F.3d 96, 99-101 (7th Cir. 1995) does not help the Beeler Trust, because Indiana's common law presumption of death was properly applied, and the jury was properly instructed on the same.

## II.     Certification to the Supreme Court of Indiana under Ind. R. App. P. 64

Pursuant to Ind. R. App. P. 64, the Beeler Trust requests the court to certify to the Supreme

---

[10] As indicated in the court's February 26, 2008 order (Doc. No. 146), it cannot be said that this was the only element not proven, because the evidence created conflicting inferences regarding whether Mr. Beeler failed to communicate with those persons who would be most likely to hear from him, and whether a diligent inquiry and search were conducted. However, only the nature of Mr. Beeler's absence as 'unexplained' is relevant to the discussion.

13

Court of Indiana the contested state law issues— the question of whether jury instruction number 22 and the resulting verdict form accurately stated Indiana's common law presumption of death under the facts and circumstances of the present case. The Beeler Trust argues that there is sufficient reason for certification based on (1) the alleged inconsistency found in Indiana's case law and jury instruction number 22 regarding the presumption of death, and (2) the rulings issued in a related state case[11] concluding that the presumption of Mr. Beeler's death arose.

Ind. R. App. P. 64 states in relevant part: "any federal district court may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Although certification is a useful tool of cooperative federalism, as it permits a federal court to seek a definitive ruling from the highest court of the state on the meaning of state law, it is not without costs to the litigants and the state court. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 638 (7th Cir. 2002); *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001). Therefore, this court approaches the decision to certify with circumspection. *Id*.

Federal courts consider several factors when deciding whether to certify a question to a state supreme court: (1) the degree of uncertainty that exists on the state law issue; (2) whether the issue presents a matter of public concern; (3) whether the issue is likely to recur; (4) whether the issue is

---

[11]*See* Footnote 54 of the court's February 26, 2008 order (Doc. No. 146), explicitly acknowledging that the rulings issued by Judge Stephen R. Bowers of the Elkhart Superior Court in the state case *Valley Forge v. John Martin*, Cause No. 20D02-0508-PL532, are not controlling upon this court. The jury verdict rendered in the present case cannot conflict with another fact-finder's determinations in a completely separate case where dissimilar evidence was presented and different credibility determinations were made. As this court previously held "[t]he most reasonable interpretation of the evidence in this case is that Mr. Beeler consciously left his family, because there is only evidence of his intentional absence." The court rejects the Beeler Trust's repeated contentions for these reasons.

outcome determinative; (5) whether the state supreme court has had an opportunity to address the issue in other cases; (6) whether the supreme court of the state would consider the issue an important one in the growth of the state's jurisprudence; (7) whether resolution of the issue definitively will benefit future litigants or will almost exclusively affect the citizens of the state; (8) whether the intermediate courts of the state are in disagreement on the issue or the issue is one of first impression for the court of last resort; and (9) whether the case involves fact specific issues or issues upon which there is no serious doubt. *Menards, Inc.*, 285 F.3d at 638-39; *Pate*, 275 F.3d at 671-73; *see also Plastics Engineering Co. v. Liberty Mut. Ins. Co.*, 514 F.3d 651, 659 (7th Cir. 2008). If the outcome of a case is largely fact-dependent, and the facts are particularized to the case, resolution of the issues by a court may have limited precedential value and certification to a state supreme court may be inappropriate. *Liberty Mut. Ins. Co.*, 514 F.3d at 659 (citing *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir.1996); *Woodbridge Place Apartments v. Washington Square Capital, Inc.*, 965 F.2d 1429, 1434 (7th Cir.1992)).

    Under these circumstances, certification is not indicated. While the court agrees that in the broadest sense whether a family is entitled to life insurance proceeds is an important issue, and the evidentiary proof required to raise the presumption of death is outcome determinative, the court does not agree that the resolution of this case will have much impact on future cases involving this issue. This case involves a fact specific question: (Aside from whether Mr. Beeler failed to communicate with those persons who would be most likely to hear from him and whether a diligent inquiry and search was conducted) was Mr. Beeler's absence inexplicable when, during the year prior to his disappearance, he caused the Beeler family great public embarrassment by having an affair, during which time he dramatically changed his behavior and appearance, became increasingly estranged

from his family, was forced to leave the house many times, and was eventually rejected by his children and formally separated from his wife, and, just before leaving used an assumed name to rent storage for his belongings, winterized the family condominium, thoughtfully arranged the Beeler's financial affairs (including millions of dollars worth of assets), and forewarned that he would never bother the family again and there would be no trace of him left behind (absent eye-witness accounts of his being alive and well)?  This fact-intensive question lacks broad, general significance.

Certification of the broader issues of "whether Indiana's common law presumption of death was properly applied" or "whether it was proper to require that Mr. Beeler's absence be unexplained by circumstances other than those suggesting death" is also not appropriate.  This court is convinced that the law in Indiana as to the presumption of death is neither indefinite nor unclear, and the Beeler Trust was required to show by a preponderance of the evidence that there was no other explanation for Mr. Beeler's absence.  Yet, Mr. Beeler's absence was attributable to known rational reasons for his leaving home and never returning.  The Court of Appeals of Indiana explicitly and clearly holds that Indiana's presumption of death arises when a person is inexplicably absent from home for a continuous period of seven years, fails to communicate with those persons who would be most likely to hear from him, and cannot be found despite diligent inquiry and search.  *See Roberts v. Wabash Life Ins. Co.*, 410 N.E.2d 1377 (Ind.Ct.App. 1980) (*citing Equitable Life Assurance Society v. James*, 127 N.E. 11 (Ind.Ct.App. 1920); *Metropolitan Life Insurance Co. v. Lyons*, 98 N.E. 824 (Ind.Ct.App. 1912)).  Proof of Mr. Beeler's absence alone is not enough.  *See Lyons*, 98 N.E. at 825-26.  Further, the Supreme Court of Indiana expressly stated, without elaboration, that "[a]t common law a person was presumed to be living for seven years after his disappearance, and a presumption of death arose only from an unexplained absence for that length of time."  *Prudential Ins. Co., of America v.*

16

*Moore*, 149 N.E. 718, 721 (Ind. 1925) (finding that a statutory presumption of death after five years for the management of an absentee's estate did not affect the common law presumption of death). Where no evidence of Mr. Beeler's actual death existed, where the Beeler Trust admitted its inability to win the case without raising the presumption, and where the jury determined that the presumption did not apply, the jury was not then required to weigh all the evidence in resolving the ultimate fact of death, because the issue was resolved— it was determined that it is at least equally probable that Mr. Beeler is still among the living, because the Beeler Trust failed to meet its burden in the first instance. As such, the presumption was properly addressed in the jury instructions and the verdict form. This court is not uncertain about the content of Indiana law on the issues raised.

The issues upon which certification is requested raise no serious doubts. Not only was there no proof of Mr. Beeler's death, but the facts showed Mr. Beeler's absence was intentional, planned, and certainly explained. The extensive facts reveal that Mr. Beeler consciously left his family to live another life, after meticulously arranging the Beeler's affairs and forewarning them that no trace of him would be left behind. Mr. Beeler's disappearance was explicable by circumstances indicating that Mr. Beeler was not dead, and thus, the defendants were not obligated to pay the life insurance proceeds. Further, Mr. Beeler's initial disappearance is not only explained, but his continued absence from his family is explained by the same facts presented at trial and considered herein.

An unfavorable jury verdict does not make certification any more proper. Certification to the Supreme Court of Indiana at this stage, after a lengthy and emotional trial wherein the most reasonable interpretation of the evidence is that Mr. Beeler consciously left his family, would not save time, energy, and resources, but would expend them wastefully.

The Beeler Trust chose its litigation strategy and must now heed the jury's verdict.

17

Accordingly, the Beeler Trust's notice of appeal filed on March 26, 2008 is now effective. *See* FED. R. APP. P. 4(a)(4); *United States v. Powers*, 168 F.3d 943 (7th Cir. 1999).

## CONCLUSION

The Beeler Trust failed to meet its burden in raising the presumption of death as to Mr. Beeler. As held in this court's February 26, 2008 order, under the extensive facts of this case, the jury made this reasonable determination after being properly instructed on the application of Indiana's presumption of death, as unambiguously set forth in Indiana case precedent. Thus, reconsideration of this court's order, or certification of the state issues, is not appropriate. On the basis of the foregoing, the Beeler Trust's "Motion for Reconsideration or Certification" is **DENIED** (Doc. No. 147).

SO ORDERED.

DATED: May 12, 2008

                                                  /s/ William C. Lee
                                        WILLIAM C. LEE, JUDGE
                                        UNITED STATES DISTRICT COURT